IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DANIEL W. PHOENIX,

      Plaintiff,

v.

                                              Civil Action No. 3:23cv335

STEVE HERRICK, *et al.,*

      Defendants.

## MEMORANDUM OPINION

Daniel W. Phoenix,[1] a former Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983.[2] The action is proceeding on Phoenix's Complaint. (ECF No. 1.)[3] Phoenix contends that Defendants subjected him to cruel and unusual punishment. Specifically, Phoenix contends that Defendant Ferguson acted with deliberate indifference when he directed Phoenix to descend from the prison van in leg shackles despite the fact the step on the van would not deploy. (ECF No. 1 ¶ 32.) Phoenix stumbled and injured his ankle. (ECF No. 1 ¶ 32.) Phoenix contends that Defendants Henceroth, Harris, Saunders, Marinos, and Schnur (the

---

[1] During the course of this litigation, Plaintiff changed his last name from Jamison to Phoenix.

[2] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[3] By Memorandum Opinion and Order entered on February 24, 2025, the Court granted the Motion to Dismiss by Defendants Herrick, Fleming, Oates, Epps, and Dawson and dismissed all claims against them. (ECF Nos. 37, 38.)

"Medical Defendants") acted with deliberate indifference in treating his ankle injury. (ECF No. 1, at 14, 17.)

Phoenix raises the following claims against the remaining defendants:[4]

| | |
|---|---|
| Claim 1 | "CO Ferguson violated [Phoenix's] 8th Amendment[5] rights by being deliberately indifferent to [Phoenix's] safety" when he ordered Phoenix to exit the prison van even though the step was not deployed. (ECF No. 1 ¶ 43.) Ferguson should have a second officer present. (ECF No. 1 ¶ 52 (a).) Ferguson should have pulled the step out even though it was not working. (ECF No. 1 ¶ 52(b).) |
| Claim 2 | Dr. Harris exhibited deliberate indifference to Phoenix's "ankle injuries and condition as he did not provide proper, timely or adequate medical services . . . ." (ECF No. 1 ¶ 45), including "adequate pain management," and a "brace or device for ankle mobilization," (ECF No. 1 ¶ 51(d) &(e)). |
| Claim 3 | Advanced practice registered nurse ("APRN") Marinos acted with deliberate indifference to Phoenix's ankle injury "as he did not provide proper, timely or adequate medical services . . . ." (ECF No. 1 ¶ 46), including "adequate pain management," and a "brace or device for ankle mobilization," (ECF No. 1 ¶ 51(d) &(e)). |
| Claim 4 | Nurse Practitioner ("NP") Saunders acted with deliberate indifference to Phoenix's ankle injury when "she did not provide proper, timely, or adequate medical services . . . ." (ECF No. 1 ¶ 47), including "adequate pain management," and a "brace or device for ankle mobilization," (ECF No. 1 ¶ 51(d) &(e)). |
| Claim 5 | Dr. Henceroth acted with deliberate indifference to Phoenix's ankle injury when "he did not provide timely, or adequate or proper medical services . . . ." (ECF No. 1 ¶ 48), including "adequate pain management," and a "brace or device for ankle mobilization," (ECF No. 1 ¶ 51(d) &(e)). |

---

[4] The Court employs the pagination assigned by CM/ECF docketing system. The Court corrects the punctuation, capitalization, and spelling in the quotations from the parties' submissions. The Court omits any secondary citations in the quotations from the parties' submissions.

The Court utilizes the spelling of Defendants' names as contained in the Motions for Summary Judgment. Additionally, the Court utilizes Defendants' job titles as contained in their Motions for Summary Judgment.

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Claim 6    Nurse Schnur acted with deliberate indifference to Phoenix's ankle injury when she did not provide "proper, timely, or adequate medical services . . . ." (ECF No. 1 ¶ 49), including "adequate pain management," and a "brace or device for ankle mobilization," (ECF No. 1 ¶ 51(d) &(e)).

The matter is before the Court on the Motion for Summary Judgment filed Defendant Ferguson (ECF No. 41) and the Motion for Summary Judgment filed by the Medical Defendants (ECF No. 58). The Court provided Phoenix with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 43, 61.)

Phoenix has responded extensively to the Motions for Summary Judgment. As is his practice, Phoenix has disregarded the rules and directives of the Court in responding to the Motions for Summary Judgment. The Medical Defendants' Motion to File a Consolidated Response (ECF No. 76) will be GRANTED. The Medical Defendants have objected to Phoenix's response. The Court will address Phoenix's opposition to the Motions for Summary Judgment in Section II below, prior to turning the merits of the Motions for Summary Judgment. Nevertheless, ultimately, the Motions for Summary Judgment, (ECF Nos. 41, 58), will be GRANTED.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

3

marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448).

Defendant Ferguson relies upon the verified Complaint in moving for summary judgment. In support of their Motion for Summary Judgment, the Medical Defendants have submitted: copies of Phoenix's medical records (ECF No. 59-1); the Declaration of Dr. Harris (ECF No. 59-2); the Declaration of APRN Marinos (ECF No. 59-3); and, the Declaration of Nurse Schnur (ECF No. 59-4). Additionally, the Medical Defendants also cite the Declaration of William Henceroth in a related case involving Phoenix and some of these same defendants. (*See* ECF No. 59 ¶ 3 (citing Declaration of William Henceroth, M.D. ¶ 1, *Daniel Phoenix v. Harold Clarke, et al.*, Case No. 3:23-cv-276 (E.D. Va. June 26, 2025), ECF No. 89-2. The Court will refer to this document simply as "Dr. Henceroth Decl.".

## II. Phoenix's Opposition to the Motions for Summary Judgment

Phoenix has opposed the Motions for Summary Judgment by filing, among other things: (1) Response to the Motion for Summary Judgment (ECF No. 68); (2) a Motion to Stay (ECF No. 69); (3) a Motion for Discovery and Issuance of Subpoenas (ECF No. 71); and, (4) two Motions to Appoint Counsel (ECF Nos. 73, 74). As explained below, Phoenix again has misrepresented the facts, ignored the relevant rules governing his submissions, and specifically disregarded the directives of the Court. *See, e.g., Jamison v. Clark*, No. 3:22CV425, 2024 WL 251927, at *1 (E.D. Va. Jan. 23, 2024) ("*Jamison I*") (finding that Phoenix "disregarded the Court's orders, provided knowingly false information, and realleged claims against defendants that previously had been dismissed with prejudice by the United States District Court for the Western District of Virginia") *aff'd sub nom. Jamison v. Dotson*, No. 24-6132, 2024 WL 3220310 (4th Cir. June 28, 2024). While the Court will not simply strike some of Phoenix's submissions as the Medical Defendants request (*see* ECF No. 65, at 2), the Court will limit its consideration of some of the material submitted by Phoenix.

### A. Phoenix Regularly Ignores Court Rules and Orders

The Court's evaluation of Phoenix's current conduct does not occur in a vacuum. Two years ago, the Court observed that although Phoenix is appearing *pro se*, "he is a sophisticated litigant." *Jamison I*, 2024 WL 251927, at *7. The Court observed that, "Jamison has an expansive history of unnecessarily protracting litigation by improper complaints and ignoring the Court's directions." *Id.* at *8. The Court found that Phoenix's "conduct in the present action alone stands as a testament to his inclination to ignore the Federal Rules of Civil Procedure, the Court's orders, and to proceed in manner of his own choosing." *Id.* As explained below, in the

5

present action, Phoenix continues inclination "to ignore the Federal Rules of Civil Procedure, the Court's orders, and to proceed in manner of his own choosing." *Id.*

Since filing of *Jamison I*, Phoenix filed more than fifteen additional actions in this Court. *See id.* (citing cases); *Phoenix v. Dotson*, 3:24CV625 (E.D. Va. Nov. 21, 2024). Therefore, when the Court filed the present action, the Court informed Phoenix that, "[e]ach submission must bear the appropriate civil action number for the case to which it pertains." (ECF No. 3 ¶ 8.) The Court further warned Phoenix that he could not submit a single response or motion listing multiple cases. (*Id.*)[6] As discussed below, Phoenix simply disregarded that directive.

## B. Phoenix's Submissions Listing Multiple Cases

Phoenix has submitted a Motion to Stay, Motion for Discovery and Issuance of Subpoenas, and two duplicate Motions for Appointment of Counsel that bear the civil action number for the present action and also cases 3:23cv276,[7] 3:23cv316, 3:23cv357, 3:23cv615. (ECF No. 69, at 1; ECF No. 71, at 1; ECF No. 73, at 1; ECF No. 74, at 1.) He has submitted a copy of these motions for each of his cases. Once again, Phoenix has chosen to ignore the Court's orders and proceed in his preferred manner. The motions contain information that is inaccurate and irrelevant to this present action. Phoenix's disregard of the Court's directives regarding filing individualized motions for each separate civil action provides sufficient grounds for denying each of the motions. Accordingly, the motions (ECF Nos. 69, 71, 73, 74) will be

---

[6] The Court warned Phoenix that if he "attempts to submit one response [or motion] listing a group of case numbers, the Court will only docket that submission in the first-listed civil action on that submission. The Court will not consider the submission as a response in any other civil action." (ECF No. 3 ¶ 8.)

[7] Phoenix transposed the numbers for this case, as "3:23cv267." He does not have a case with that case number.

DENIED on that basis alone. Nevertheless, in this instance, the Court will provide an individualized discussion of each motion below and the Court's reasons for denying that motion.

In his Motion to Stay, Phoenix requests that the Court stay further proceedings in this matter pending the resolution of his Motion for Discovery and Motion for Appointment of Counsel. (ECF No. 70, at 1.)

In his Motion for Discovery and Issuance of Subpoenas, Phoenix states that, "[i]n each case, the court has denied Phoenix discovery and production of requested documents. The Defendants have further denied and not proffered critical documents they are obligated to provide under the Courts Rules for Discovery despite several requests from the plaintiff." (ECF No. 72 ¶ 3.) Phoenix then goes on to note that he has received copies of his medical records, in the present action, but they are somehow incomplete. (ECF No. 72 ¶¶ 7, 8.) In his Memorandum in Support of his Motion to Stay, Phoenix references this present action and states, "no discovery has happened in this matter." (ECF No. 70, at 4.)

The Court notes Phoenix's suggestion that he has been denied all discovery in the matter is false. Previously, Phoenix complained that Defendant Ferguson had not responded to his discovery requests and requested a stay. By Memorandum Order entered on October 3, 2025, the Court directed Defendant Ferguson to respond to Phoenix's requests for discovery and a stay. (ECF No. 56). On October 17, 2025, Defendant Ferguson identified that in response to Phoenix's discovery requests: no video exists of Phoenix's fall from the prison van; he had provided Phoenix with his medical record from January 1, 2023 through December 31, 2024; he provided Phoenix with grievances and complaints related to his ankle injury; and, he would provide Phoenix with a copy of the video and documentary investigative reports taken by Lt. Patterson. (ECF No. 57-1, at 1–2.) Based on this filing, by Memorandum Order entered on

7

November 20, 2025, the Court denied as moot Phoenix's prior motion for discovery and directed Phoenix to file any response to the Motion for Summary Judgment within twenty (20) days of the date of entry thereof. (ECF No. 62.)

## C. Motion for Discovery and Issuance of Subpoenas

In *pro se* prisoner cases such as this, "there is no prohibition on the immediate availability of discovery upon the commencement of the case." *Smith v. Rollins*, No. 3:16CV293-HEH, 2019 WL 13418468, at *1 (E.D. Va. Jan. 29, 2019) (quoting *Awan v. U.S. Dep't of Justice*, No. 101100 (BAH), 2011 WL 2836555, at *1 (D.D.C. July 13, 2011)). Phoenix has been provided an unfettered opportunity to conduct discovery in the present action and has taken advantage of the opportunity. He fails to articulate any basis, limited to particulars of this action, explaining why an order from the Court pertaining to discovery is necessary. Further, with respect to his vague request for issuance of subpoenas, Phoenix fails to clearly articulate to whom he wishes the subpoenas issued and what documents he requires.[8] Accordingly, Phoenix's Motion for Discovery and Issuance of Subpoenas will be DENIED.

## D. Motion to Stay

"[S]ummary judgment should only be granted 'after adequate time for discovery,'" *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). As noted above, Phoenix has had ample time to conduct discovery. Nevertheless, "when a party lacks material facts necessary to combat a summary judgment motion, [the party] may file an 'affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its

---

[8] The pertinent Local Rule states: "Parties appearing *pro se* may apply for subpoenas in their own behalf. All such requests by such party must be accompanied by a memorandum setting forth the names and addresses of witnesses or the documents requested and why and for what purpose or purposes." E.D. Va. Loc. Civ. R 45(A).

8

opposition.'" *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 56(d)). "The threshold showing to support a Rule 56(d) motion is low." *Escobar-Salmeron v. Moyer*, 150 F.4th 360, 369 (4th Cir. 2025). Nevertheless, the party seeking a stay pursuant to Fed. R. Civ. P. 56(d), must "specifically allege why the information sought would [be] sufficient to create a genuine issue of material fact such that it [could] defeat[] summary judgment." *Strag v. Bd. of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995). Mere "[v]ague assertions" that more discovery is needed are insufficient to warrant a stay or the denial of a motion for summary judgment. *Escobar-Salmeron*, 150 F.4th at 372 (alteration in original) (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)).

Here, Phoenix has not identified any specific information that he needs in discovery, much less explained how such information would be sufficient to defeat the Motions for Summary Judgment filed in this case. Instead, Phoenix initially stated falsely that, "no discovery has happened in this matter." (ECF No. 70, at 4.) Later, Phoenix acknowledges that Defendants have responded to his requests for discovery, but vaguely suggests those responses were incomplete.

> Phoenix has requested the full medical records, the full grievance records, VCORIS electronic files and investigative reports which would show all the defendants in the case were aware of the injury, the injury was worsening and the care provided was cursory amounting to no care at all, no testing was provided with the exception of an Xray that would not show nerve damage or what was causing the numbness, and these files would show that the medical, administrative defendants were aware of this but did nothing to provide proper care for Phoenix as they are obligated by VADOC policy and Federal laws to provide adequate care for prisoners in which he would need to prove or infer that his allegations of deliberate indifference were valid for a Jury to decide.

(ECF No. 70, at 7; *see also* ECF No. 68-2 ¶ 11.) Given the hundreds of pages of medical records and grievances Defendants provided to Phoenix (*see* ECF No. 57-1), and that Phoenix has filed with the Court (ECF No. 68-1), his vague allegations that the discovery was incomplete is not

9

sufficient to stay summary judgment. Phoenix has had ample time to alert the Court and

Defendants to a specific document that is missing or that was not provided and he has not done

so. Further, Phoenix fails to articulate with specificity the content of any omitted document that

would demonstrate any of the Defendants turned a blind eye to his need for medical care. Rather

than a legitimate attempt to delay summary judgment while Phoenix pursues evidence in support

of his claims, the Motion for a Stay is an improper attempt to delay the proceedings with false

and unsubstantiated allegations. Accordingly, the Motion for a Stay (ECF No. 69) will be

DENIED.

### E. **The Motions for Appointment of Counsel**

The United States Court of Appeals for the Fourth Circuit has stated

> that a district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel. [*Whisenant v. Yuam*, 739 F.2d 160, 162 (4th Cir. 1984)]. That inquiry requires the court to determine (1) whether the plaintiff "has a colorable claim" and (2) considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff "lacks the capacity to present it." *Id.* If both questions are answered affirmatively, the case presents exceptional circumstances. *Id.*

*Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024). Phoenix has presented colorable claims,

so the analysis of his Motion for Appointment of Counsel focuses on considering his claims'

objective complexity and Phoenix's subjective abilities, whether he lacks the capacity to present

his claims. The claims in the present action are not particularly complex—Phoenix's fall from a

van and the adequacy of the medical care to treat the resulting ankle injury. Phoenix's

submissions reflect that he is more than competent to litigate those claims. Therefore, the

appointment of counsel is not necessary. Further, as he has in prior motions, Phoenix insists that

he has been denied the opportunity to conduct discovery. (*See* ECF No. 73, at 17.)

The Court adds that "the assistance of a pro bono lawyer in civil litigation is a privilege." *Cartwright v. Silver Cross Hosp.*, 962 F.3d 933, 937 (7th Cir. 2020) (citing *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007)). "The valuable help of volunteer lawyers is a limited resource. It need not and should not be squandered on parties" whose very request for counsel reflects a lack of candor regarding the need for appointing counsel. *Dupree v. Hardy*, 859 F.3d 458, 462–63 (7th Cir. 2017). The Motions for Appointment of Counsel (ECF Nos. 73, 74) will be DENIED.

### F. **Phoenix's Response to the Motion for Summary Judgment**

Phoenix's Motion for Leave to File Response to Summary Judgment (ECF No. 66) will be GRANTED by allowing his Response to the Motion for Summary Judgment ("Response to Summary Judgment," ECF No. 68) -- which exceeds the page limit prescribed by the Local Rules -- is FILED and will be considered by the Court.

In his Response to Summary Judgment, Phoenix makes new allegations about Defendants' negligence or gross negligence. Further, Phoenix seeks to expand his Eighth Amendment claim against NP Marinos to include conduct that predates that set forth in the Complaint. Phoenix may not add new claims or allegations by passing reference in a responsive pleading. *See Hurst v. Dist. of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017) ("a plaintiff may not amend her complaint via briefing") (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics. Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way

11

of amended pleadings, not by arguments asserted in legal briefs"). These new claims will receive no further consideration here.

In order to ensure that the parties shoulder their respective burdens for a motion for summary judgment, Local Rule 56(B) requires that:

> Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and *citing the parts of the record relied on to support the facts alleged to be in dispute.* In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. 56(B) (emphasis added). In Phoenix's Response to Summary Judgment, he includes a specifically captioned section, "Genuine Material Facts in Dispute." (ECF No. 68, at 22.) However, except for two instances, Phoenix fails to cite "the relevant parts of the record relied on to support the facts alleged to be in dispute." *Id.* Therefore, the Court can assume the remainder of facts identified by the Medical Defendants in their list of material facts are admitted. E.D. Va. Loc. Civ. R. 56(B).

Phoenix attached to his Response to Summary Judgment 559 pages of medical records, grievance material, correspondence, and other information. (ECF No. 68-1.) Phoenix, however, fails to provide any useful citation to individual documents. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)). Rather, "[t]he court need consider only the cited materials . . . ." Fed. R. Civ. P. 56(c)(3); *see Murthy v. Missouri*, 603 U.S.

12

43, 67 (2024) (alterations in original) (observing that "[j]udges are not like pigs, hunting for truffles buried [in the record]" (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010))). Thus, these materials are of little use in deciding the propriety of summary judgment.

Phoenix's Complaint is sworn to under penalty of perjury. (ECF No. 1, at 18.) Additionally, Phoenix attached his own declaration to his Response to Summary Judgment. (ECF No. 68-2.) The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

Phoenix has made numerous sworn statements that are of no value in assessing the propriety of summary judgment. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) (observing that "[a]iry generalities, conclusory assertions[,] and hearsay statements [do] not suffice to stave off summary judgment"). For example, Phoenix swears that Dr. Harris and Nurse Schnur knew Dr. Henceroth could not provide Phoenix with proper care because Phoenix told them so. Phoenix swears:

> These medical practitioners were notified of issues with Dr. Henceroth and his lack of ability to treat Phoenix with no imaging despite his various diagnosis for his injuries and his lack of overall care on several occasions so they would had and did review Phoenix's medical records about Henceroth care showing wrong diagnosis when proper imaging was present. They continued to send Phoenix to him regardless of these facts. . . . They would have also seen that Phoenix's condition was reported as worsening, and only they could have written the orders for testing to address the numbness and nerve pain, but they did not. So to send Phoenix back to Hensroth was cursory as by Henceroth own declaration he cannot provide testing treatments or care.

(ECF No. 68-2 ¶ 4.) Phoenix, however, fails to provide specific facts indicating why Dr. Harris and Nurse Schnur knew Phoenix's condition was deteriorating or that Dr. Henceroth provided an incorrect diagnosis. This deficiency is not cured by Phoenix vague statement "defendants were also notified by . . . facility investigators [that] Phoenix's ankle was getting worse and needed care as records indicate and can be seen through the VACORIS[9 files and reports filed by investigators." (ECF No. 68-2 ¶ 14.) "Vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to those defendants." *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (citation omitted).

Given the foregoing principles and submissions, the following facts are established for purposes of the Motions for Summary Judgment.

### III. Summary of Relevant Facts

#### A. The Initial Injury

On January 25, 2023, Phoenix returned to Deerfield Correctional Cener ("DCC") from an outside medical appointment.[10] (ECF No. 68-2 ¶¶ 1, 2.) The step on the van would not pull out. (ECF No. 1 ¶ 32.) Correctional Officer Ferguson directed Phoenix "to dismount the van despite the step not being deployed and when [Phoenix] went to step to the ground the leg shackle caught and [Phoenix] fell into Ferguson and while [Phoenix] tried to regain footing the shackles

---

[9] VACORIS is "the VDOC's inmate information management system." *Thomas v. Dotson*, No. 7:25-CV-00109, 2025 WL 3215169, at *2 (W.D. Va. Nov. 18, 2025).

[10] Phoenix has a host of health issues, including, "anxiety, asthma, celiac disease, GERD, Barrett's esophagus, several food allergies, dermatitis, high blood pressure, an enlarged prostate, irritable bowel syndrome, obesity, chronic headaches, hearing loss, hemorrhoids, depression, diabetes, pro-traumatic stress disorder, and Sjogren's disease." (ECF No. 59-3 ¶ 5.)

14

caused trauma to Phoenix's ankle by twisting and pulling hard on [Phoenix's] ankle causing horrible pain." (ECF No. 1 ¶ 32.)[11]

## B. Initial Medical Treatment and Interactions with APRN Marinos

After the leg shackles were removed, Phoenix's ankle started to swell. (ECF No. 68-2 ¶ 2.) Phoenix was taken the medical department. (ECF No. 1 ¶ 21.) Phoenix informed Nurse Smith of his fall and injury. (ECF No. 1 ¶ 21.) At that time, there was no visible swelling. (ECF No. 1 ¶ 33.) Nurse Smith told Phoenix "there was no swelling at that time. If he had any issue with his ankle to put in an emergency grievance." (ECF No. 1 ¶ 21.)[12]

Subsequently Phoenix submitted an emergency grievance. (ECF No. 1 ¶ 22.) On January 26, 2023, Phoenix was seen by APRN Marinos. (ECF No. 59-3 ¶¶ 1, 7.) Phoenix "showed no distress . . . but did have some swelling of the right ankle." (ECF No. 59-3 ¶ 7.) APRN Marinos provided Phoenix with crutches, an Ace Wrap, and ice and recommended X-rays of Phoenix's right ankle. (ECF No. 59-3 ¶ 7.)

Dr. Harris[13] approved the order for X-rays and the X-rays were taken on February 2, 2023. (ECF No. 59-2 ¶ 13.) The X-ray findings revealed: "Healed fractures of distal tibia and fibula after surgical fixation with plate and screws. Fracture tibial screw. Degenerative change

---

[11] Phoenix contends that VADOC policy required two officers to be present upon his removal from the van and that the leg shackles were not long enough. (ECF No. 1 ¶ 32.)

[12] In his declaration offered in opposition to the Motion for Summary Judgment, Phoenix now swears that APRN Marinos examined his ankle, and "told the nurse to have me go back to building while the ankle was red and Phoenix could barely walk." (ECF No. 68-2 ¶ 2.)

[13] Dr. Harris is the former Medical Director of DCC. (ECF No. 59-2 ¶ 4.)

about the ankle mortise. Mild soft tissue swelling." (ECF No. 59-2 ¶ 13.)[14] There were "[n]o acute fractures," merely "[d]egenerative changes." (ECF No. 59-2 ¶ 13.)

On February 16, 2023, Phoenix was seen in the medical clinic by one of the staff nurses. (ECF No. 59-3 ¶ 9.) Phoenix reported swelling of his ankle and pain. (ECF No. 59-3 ¶ 9.)

On February 20, 2023, APRN Marinos reviewed the nurse's note and Phoenix's X-rays and placed a referral for Phoenix to be seen by an orthopedic specialist. (ECF No. 59-3 ¶ 9.) Dr. Harris approved this referral. (ECF No. 59-3 ¶ 9.) This concluded APRN Marinos's interaction with Phoenix. (ECF No. 59-3 ¶ 10.) APRN Marinos left DCC in February of 2023 and had no further involvement with Phoenix's medical care. (ECF No. 59-3 ¶ 10.)

## C. Interaction with NP Saunders and Subsequent Medical Care

NP Saunders was only involved with providing Phoenix medical care with respect to his right ankle, on one occasion, on March 1, 2023. (ECF No. 59-2 ¶ 15.) On that date, NP Saunders provided "a comprehensive review with Mr. Phoenix of his various medical concerns including a discussion of his reducible hernia, dietary/nutritional needs (Vitamin D), tinnitus, shoulder issues, and GI issues, and she also recommended follow-up with orthopedics regarding the shoulder and ankle." (ECF No. 59-2 ¶ 15.) She recommended that he have a follow-up appointment with an orthopedic specialist with respect to his ankle. (ECF No. 59-2 ¶ 15.) That appointment occurred on April 27, 2023. (ECF No. 59-2 ¶ 15.)

On March 2, 2023, with respect to his prior ankle problems, Dr. Harris referred Phoenix to a specialty clinic to be measured for boots and custom diabetic inserts. (ECF No. 59-2 ¶ 13.) Upon his return from that clinic, Phoenix reported his pain was zero. (ECF No. 59-2 ¶ 13.)

---

[14] At some point in his past, Phoenix sustained a gun shot would to his right ankle. (ECF No. 59-2 ¶ 11.) This resulted in a "severe right ankle fracture" and reconstructive surgery and "severe neuropathy." (ECF No. 59-2 ¶ 11.) Phoenix "was being followed by podiatry for this and was provided specialty boots." (ECF No. 59-2 ¶ 11.)

16

On April 27, 2023, upon the referral from Dr. Harris, Phoenix was seen by Dr. William Henceroth, a general orthopedic surgeon. (ECF No. 59-2 ¶ 13; Henceroth Decl. ¶ 1.) For incarcerated patients, such as Phoenix, Dr. Henceroth

> would make treatment recommendations to be reviewed and implemented in the prison, but [he] could not issue orders. The actual ability to carry out the treatment recommendations, as well as the timing and manner in which these recommendations were carried out, were made in collaboration with the prison primary care providers.

(Henceroth Decl. ¶ 3.) After reviewing the x-rays of Phoenix's ankle, which showed degenerative changes, "Dr. Henceroth diagnosed [Phoenix] with osteoarthritis of the right ankle." (ECF No. 59-2 ¶ 13.) Dr. Henceroth offered Phoenix a cortisone injection. (ECF No. 59-2 ¶ 13; ECF No. 68-2 ¶ 6.) Phoenix refused the injection.[15] (ECF No. 59-2 ¶ 13.)

While not directly related to his instant ankle injury, on May 1, 2023, Phoenix received specialty shoes and inserts for his feet. (ECF No. 59-2 ¶ 13.)

On July 13, 2023, because Phoenix continued to complain of ankle pain, with the approval of Dr. Harris, Phoenix was returned to Dr. Henceroth. (ECF No. 59-2 ¶ 13.) Phoenix informed Dr. Henceroth that, since his van injury, he could only run a mile. (ECF No. 59-2 ¶ 13.) Dr. Henceroth diagnosed Phoenix with mild degenerative joint disease of the right ankle and recommended that Phoenix use an ankle brace with laces. (ECF No. 59-2 ¶ 13.) Dr. Henceroth again offered Phoenix a cortisone injection. (ECF No. 59-2 ¶ 13.) Phoenix again refused. (ECF No. 59-2 ¶ 13.) On July 18, 2023, Phoenix received the ankle brace recommended by Dr. Henceroth. (ECF No. 59-2 ¶ 13.)

---

[15] Phoenix contends that he "would never allow such an injection from someone with such shaky hands." (ECF No. 68-2 ¶ 6.) Phoenix also states that he "has significant hardware in his ankle and has [had] multiple cortisone shots over the years in which cortisone does very, very little to nothing for any relief so there is no point in the shots . . . ." (ECF No. 1 ¶ 36.)

17

Phoenix asserts that the ankle brace did not help his "numbness and nerve pain." (ECF No. 68-2 ¶ 7.) However, there is no indication that Phoenix ever informed a medical provider that the ankle brace was ineffective.

Dr. Harris indicates that on occasion he provided Phoenix with medication. (ECF No. 59-2 ¶ 17.) Phoenix denies that Dr. Harris provided him with medication. (ECF No. 68-2 ¶ 9.) But, Phoenix acknowledges that the nurse would provide him with Tylenol. (ECF No. 68-2 ¶ 15.)

Phoenix was transferred from DCC to another Virginia Department of Corrections ("VDOC") facility on January 9, 2024. (ECF No. 59-2 ¶ 13.) Phoenix is no longer incarcerated in the VDOC.

### D. Nurse Schnur's Limited Involvement in the Care for Phoenix's Ankle

Nurse Schnur was the Healthcare Services Administrator ("HSA") at DCC. (ECF No. 59-4 ¶ 6.) As the HSA, she did not provide direct patient care. (ECF No. 59-4 ¶ 7.) Her role

> was administrative, not clinical. In this role, [she] provided administrative oversight of the medical services at DCC, which included overseeing healthcare staffing needs at DCC, coordinating resources involved in the delivery of healthcare, ensuring compliance with applicable regulations affecting the delivery of healthcare at DCC, and coordinating inmate medical services involving various disciplines.

(ECF No. 59-4 ¶ 6.) Although she is a registered nurse, "the nursing staff reported to the Director of Nursing in the chain of command. [She] was not their supervisor as [her] role was administrative." (ECF No. 59-4 ¶ 8.) Nurse Schnur did not and could not make treatments decisions for Phoenix. (ECF No. 59-4 ¶ 9.)

"[T]here were several occasions in which [she] had *indirect* involvement with [Phoenix] during his time at DCC, those occasions generally involved the coordination of

multidisciplinary team meetings between [Phoenix] and the various members of the healthcare treatment team. [She] was not involved with providing direct clinical care to [Phoenix]." (ECF No. 59-4 ¶ 10.) With respect to respect to Phoenix's right ankle injury, her "involvement was limited to the general coordination of care for his myriad of medical conditions, but nothing specific for this injury in particular." (ECF No. 59-4 ¶ 11.)

## IV. Analysis

To survive a motion for summary judgment on an Eighth Amendment claim, a plaintiff must demonstrate: "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must present evidence that demonstrates that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citation omitted).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

19

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). "Importantly, a prison official 'who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted.'" *Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006) (alterations in original) (quoting *Farmer*, 511 U.S. at 844).

## A. Defendant Ferguson

In Claim 1, Phoenix contends that Defendant Ferguson acted with deliberate indifference by making him exit the van even though the step was not working and while Phoenix was wearing shackles. Phoenix simply fails to demonstrate that Defendant Furguson subjectively realized that requiring Phoenix to exit the van under these circumstances posed a substantial risk of serious harm to his person. *Farmer*, 511 U.S. at 837; *Johnson v. Tennessee Dep't of Corr./Corecivic Transportation*, No. 3:24-CV-01015, 2025 WL 627221, at *3 (M.D. Tenn. Feb. 26, 2025) ("While there have been cases involving falls from a prison van where the allegedly

20

unsafe conditions have risen to the level of objective seriousness required to state an Eighth Amendment claim, such cases are few and far between, and would be expected to involve an additional, complicating factor . . . ."). Further, the record demonstrates that Defendant Ferguson did not stand indifferent to any extra risk posed to Phoenix under these circumstances. Defendant Ferguson positioned himself in such a manner that he was able to catch Phoenix when he stumbled upon exiting the van. *See Brown v. Harris*, 240 F.3d 383, 389–90 (4th Cir. 2001) (observing that prison official who responds reasonably to a known risk does not act with deliberate indifference). Accordingly, Claim 1 will be DISMISSED.

## B. The Medical Defendants

With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167. A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).[16]

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*,

---

[16] The Medical Defendants initially contend that Phoenix's ankle problems following the stumble from the van fail to constitute a serious medical need. Rather, they assert that although Phoenix had a past history of significant trauma to his ankle, after the stumble, he merely had "mild soft tissue injuries." (ECF No. 59, at 13.) Given the prior trauma to Phoenix's ankle, the Court assumes without deciding that it would be possible for a reasonable juror to conclude that the exacerbation of that trauma could constitute a serious medical need.

429 U.S. at 103–04). "Deliberate indifference can be established by showing that the medical treatment was so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Overman v. Wang*, 801 F. App'x 109, 111 (4th Cir. 2020) (citing *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

At the outset, it is appropriate to put to rest Phoenix's contention that the Medical Defendants failed to provide a "brace or device for ankle mobilization." (ECF No. 1 ¶ 51(e).) On July 18, 2023, Phoenix received the ankle brace recommended by Dr. Henceroth. (ECF No. 59-2 ¶ 13.) While Phoenix may not have liked that brace or believed it was ineffective (*see* ECF No. 68-2 ¶ 7), such allegations fail to support an Eighth Amendment claim where there is no evidence any Medical Defendant was alerted to these alleged shortcomings.

### 1. NP Saunders and Nurse Schnur

Next, it is best to dispose of Phoenix's claims against NP Saunders and Nurse Schnur. Phoenix fails to direct the Court to admissible evidence reflecting either of these individuals acted with deliberate indifference to his ankle problems. Rather, Nurse Schnur provided administrative oversight in coordinating care for Phoenix's myriad of medical complaints.

NP Saunders was only involved with providing Phoenix medical care with respect to his right ankle, on one occasion, on March 1, 2023. (ECF No. 59-2 ¶ 15.) After providing a

22

comprehensive review of Phoenix's many medical conditions, she recommended that he have a follow-up appointment with an orthopedic specialist with respect to his ankle. (ECF No. 59-2 ¶ 15.) There is no evidence that Phoenix complained of pain during this encounter.[17] There is no evidence from which a reasonable juror could conclude that Nurse Schnur or NP Saunders acted with deliberate indifference to Phoenix's ankle problems. Claims 4 and 6 will be DISMISSED.[18]

### 2. APRN Marinos

When Phoenix showed up in the Medical Department on January 26, 2023, Phoenix "showed no distress . . . but did have some swelling of the right ankle." (ECF No. 59-3, at 7.) Although he did not provide Phoenix with an ankle brace, APRN Marinos provided Phoenix with crutches, an Ace Wrap, and ice and recommended X-rays of Phoenix's right ankle. (ECF No. 59-3 ¶ 7.)

On February 20, 2023, APRN Marinos reviewed the nurse's note and Phoenix's X-rays and placed a referral for Phoenix to be seen by an orthopedic specialist. (ECF No. 59-3 ¶ 9.) At no point is there any indication that Phoenix required some level of urgent medical intervention or the provision of significant medication to manage his pain. Phoenix fails to direct the Court to any evidence which would allow a reasonable juror to conclude that APRN Marinos acted with deliberate indifference to Phoenix's ankle problems. Claim 3 will be DISMISSED.

---

[17] Upon returning from an off site appointment the next day, Phoenix reported his pain level was 0. (ECF No. 59-1, at 3.)

[18] Because Phoenix has been released from incarceration, his demands for injunctive relief will be DISMISSED as moot. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (observing that "a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there" (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986))).

### 3. **Dr. Harris and Dr. Henceroth**

On February 2, 2023, Dr. Harris approved a radiology study of Phoenix's ankle. (ECF No. 59-2 ¶ 13.) On March 2, 2023, Dr. Harris referred Phoenix to a specialty clinic to be measured for boots and custom diabetic inserts.[19] (ECF No. 59-2 ¶ 13.) Upon his return from that clinic, Phoenix reported his pain was zero. (ECF No. 59-2 ¶ 13.)

On April 27, 2023, upon the referral from Dr. Harris, Phoenix was seen by orthopedic surgeon, Dr. William Henceroth. (ECF No. 59-2 ¶ 13.) Upon reviewing the radiology report and examining Phoenix, "Dr. Henceroth diagnosed [Phoenix] with osteoarthritis of the right ankle." (ECF No. 59-2 ¶ 13.) Dr. Henceroth offered Phoenix a cortisone injection. (ECF No. 59-2 ¶ 13; ECF No. 68-2 ¶ 6.) Phoenix refused the injection. (ECF No. 59-2 ¶ 13.)

When Phoenix's complaints about his ankle persisted, Dr. Harris again referred Phoenix to Dr. Henceroth. (ECF No. 59-2 ¶ 13.) Dr. Henceroth again assessed Phoenix and concluded that he had mild degenerative joint disease in his right ankle. (ECF No. 59-2 ¶ 13.) Dr. Henceroth ordered an ankle brace. Dr. Henceroth again offered Phoenix a cortisone injection. (ECF No. 59-2 ¶ 13.) Phoenix again refused. (ECF No. 59-2 ¶ 13.) Thereafter, Phoenix was provided with an ankle brace. (ECF No. 59-2 ¶ 13.)

None of this conduct suggests deliberate indifference on the part of Dr. Harris and Dr. Henceroth.

Phoenix insists they acted with deliberate indifference because they failed to provide him with an adequate plan for pain management. Phoenix, however, fails to direct the Court to instances where he alerted these defendants to the fact that he was experiencing significant ankle

---

[19] The inserts and boots were "not specifically related to the ankle injury in this case," but the provision of these items reflects care for Phoenix's "prior ankle injury." (ECF No. 59-2 ¶ 13.)

24

pain and they ignored his pleas. Dr. Henceroth twice offered Phoenix shots of cortisone to ameliorate Phoenix's discomfort, which Phoenix refused. This is hardly a sign of deliberate indifference on the part of Dr. Henceroth. "It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). The Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment." *Id.* So long as medical staff respond reasonably to an inmate's complaints of pain, the inmate's Eighth Amendment rights are not violated. *See Brown*, 240 F.3d at 389–90. Phoenix fails to show that any of the Medical Defendants acted with deliberate indifference to his pain.

Next, Phoenix asserts that Defendants acted with deliberate indifference because they failed to order additional imaging of his ankle or by failing to send him to some other medical provider. "[T]he question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an [MRI], or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Given the facts presented to them, Phoenix fails to demonstrate Dr. Harris or Dr. Henceroth exhibited deliberate indifference by failing to order additional testing or by sending him to an additional outside specialist.

Because Phoenix fails to demonstrate that Dr. Harris or Dr. Henceroth acted with deliberate indifference, Claims 2 and 5 will be DISMISSED.

## V.   Conclusion

The Motion for Leave to File Summary Judgment Response (ECF No. 66) will be GRANTED. The Motion for Discovery and Issuance of Subpoenas (ECF No 71), the Motion to

Stay (ECF No. 69), and the Motions for Appointment of Counsel (ECF Nos. 73, 74) will be DENIED. The Motions for Summary Judgment (ECF Nos. 41, 58) will be GRANTED. Phoenix's claims will be DISMISSED. The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

_____ /s/

M. Hannah Lauck
Chief United States District Judge

Date: 3/19/2026
Richmond, Virginia

26